IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED SEP - 7 2010 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

PEABODY HOLDING COMPANY, LLC, )
et al, )
                                      )
     Plaintiffs, )
                                      )  1:09cv1043(LMB/IDD)
v. )
                                      )
UNITED MINE WORKS OF AMERICA, )
INTERNATIONAL UNION, )
                                      )
     Defendant. )

## MEMORANDUM OPINION

Plaintiffs Peabody Holding Company, LLC ("PHC") and Black Beauty Coal Company, LLC ("Black Beauty") have sued the United Mine Workers of America, International Union ("UMWA") seeking a declaratory judgment that they are not bound by a 2007 jobs contract to which plaintiffs were non-signatory parties. Before the Court are the plaintiffs' and the defendant's Motions for Summary Judgment [22, 19]. After the Court held oral argument, the plaintiffs' Motion [22] was denied and the defendant's Motion [19] was granted. This memorandum opinion expands upon the reasons for that decision.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1985). In ruling on a motion for summary judgment, a court should accept the evidence of the nonmovant, and all justifiable inferences must be drawn in

his favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). The parties concede that there are no material facts in dispute and that their motions exclusively raise matters of legal interpretation and analysis.

## I. BACKGROUND

Plaintiffs PHC and Black Beauty are subsidiaries of Peabody Energy Corporation ("Peabody Energy"). The defendant, the UMWA, is a labor organization within the meaning of the Labor Management Relations Act. 29 U.S.C. §§ 141, <u>et seq</u>.

Periodically, the UMWA negotiates with the Bituminous Coal Operators' Association, Inc. ("BCOA"), a multi-employer bargaining group, resulting in labor agreements known as National Bituminous Coal Wage Agreements. Peabody Coal Company ("PCC"), which was the employer arm of plaintiff PHC,[1] has participated in such negotiations since 1993, when the UMWA and the BCOA first agreed to a job preference agreement known as the Memorandum of Understanding Regarding Jobs Opportunities (the "MOU"). Subsequent identical agreements were signed in 1998, 2002, and 2007. The 2007 MOU, which became effective January 1, 2007 and is the agreement at issue in this litigation, was signed by "Peabody Coal Company, LLC, Signatory Employer, [As Limited Agent for

---

[1] In early 2007, PCC, a member of BCOA, was owned by PHC, which was also the parent company of various coal mining operation subsidiaries, including Black Beauty. PCC was the PHC subsidiary that employed the coal miners who worked at the PHC coal mining operation subsidiaries.

2

Parent Corporation and its Nonsignatory Coal Mining Subsidiaries]." (2007 Jobs MOU at 6).

The purpose of the 2007 MOU is "to provide job opportunities for work of a classified nature to certain laid-off and active miners of the signatory Employer [sic] (PCC) and to provide the nonsignatory Companies [sic] with an experienced pool of miners to fill available new job openings for work of a classified nature." (Id. at ¶1). The non-signatory companies bound by the agreement are the signatory company's parent, plaintiff PHC, and the bituminous coal mining subsidiaries of PHC, which are listed in an appendix to the 2007 MOU. The appendix includes plaintiff Black Beauty. (Id. at Appx. A). The 2007 MOU describes in detail the preferential hiring rights to be given to PCC employees by the non-signatory coal mining operations, and provides that the agreement "shall remain in effect until 11:59pm, December 31, 2011." (Id. at ¶ 11).

Under the 2007 MOU the parties agreed to submit to binding arbitration to resolve any disputes arising under the MOU. (Id. ¶ 14 ("the UMWA and the nonsignatory Companies subject to this MOU agree that the impartial Jobs Monitor jointly selected by the UMWA and BCOA.... shall serve as the monitor under this MOU... and investigate any violations herein")). If any allegation of a breach arises, the Jobs Monitor (hereinafter, the "arbitrator") can conduct hearings, take evidence, request briefing, and take

"reasonably necessary" steps to resolve the dispute. (Id.).

In the fall of 2007, Peabody Energy divested itself of its mining operations in the Eastern United States. These divested companies formed a separate entity, Patriot Coal Corporation ("Patriot"). That divestiture involved PCC and all of PHC's non-signatory subsidiaries except Black Beauty. (Klingl Decl. at ¶ 9-12). As a result of the October 31, 2007 divestiture, Black Beauty and PHC no longer had any common ownership connection to PCC (which had been renamed "Heritage Coal") or to any other Patriot-owned entity. (Id.). After the spinoff, Patriot entered into the 2007 MOU in its own right and agreed to be bound by it going forward.

In 2008, Black Beauty contracted with a private mine operator, United Minerals LLC, to perform some surface mining at its property located in Warrick County, Indiana. United Minerals has no relationship to PCC/Heritage or any of the other Patriot companies.

On November 20, 2008, the UMWA wrote to PHC requesting that it require Black Beauty to comply with the 2007 MOU when making job offers. Specifically, the UMWA directed the plaintiffs to "make the requisite job offers" to PCC classified employees, "keep the Union informed of such mining operations as they develop," and "give the required notice of the job selection process to the Jobs Monitor." (Pl.'s Mot. For Summ. J, Ex. 6). On

December 8, 2008, PHC responded through counsel that "once the prerequisite corporate relationship between PHC and PCC was severed (as of October 31, 2007), obligations under the Jobs MOU also were severed. An obligation to secure job opportunities for UMWA members... does not survive conveyance of the UMWA-represented subsidiary to a third party such as Patriot Coal Company." (Def.'s Mot. For Summ. J., Ex. 5).[2]

On February 9, 2009, the UMWA submitted the dispute to the designated arbitrator.[3] (See id., Ex. 6). The arbitrator received written positions from the parties, (see id., Ex. 7, Pl.'s Mot for Summ. J. Ex. 9, 10, 11), and on July 31, 2009, determined that the UMWA's claim was arbitrable and that he had authority to decide the issue. (Decision of Jobs Monitor). He did not resolve the substantive issue, and the arbitration proceedings are on hold awaiting this Court's decision.

PHC and Black Beauty brought this declaratory judgment action seeking a declaration that they are not required to submit

---

[2] The UMWA concedes that the plaintiffs cannot be required to give hiring preferences to PCC employees who joined the employment roster after the October 31, 2007 spinoff. However, the UMWA contends that the plaintiffs have an obligation to PCC employees who were in the PCC bargaining unit before the spinoff, specifically arguing that these miners must be given the preferential hiring rights required under the 2007 MOU.

[3] Steven Goldberg was assigned as the jobs monitor ("arbitrator") under the Jobs MOU. His qualifications include graduating *cum laude* from Harvard University with a Bachelor of Laws and currently serving as a Professor of Law Emeritus at Northwestern University.

5

to arbitration and that the 2007 MOU, which compels job preferences for active and laid off employees of now unrelated companies on the basis of union membership, is unlawful and unenforceable. The UMWA has filed an Answer and Counterclaim in which it seeks a declaratory judgment ordering the plaintiffs to comply with the decision of the jobs monitor and proceed to arbitration with the arbitrator Goldberg.

## II. DISCUSSION

### A. Arbitrability of Defendant's Claims

The first issue before the Court is whether the arbitrator properly determined that he has jurisdiction over the UMWA's claim against the plaintiffs.[4] The plaintiffs argue that the issue of whether two parties agreed to arbitrate a particular dispute is an issue for the courts, not the arbitrator, to decide. AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649 (1986)(holding that "the question of arbitrability- whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance- is undeniably an issue for judicial determination"). The UMWA counters that the rule in AT&T does not apply here because the issue in that case was whether a company which was not a party to the agreement was obligated to arbitrate particular issues.

---

[4] Because neither party has cited the Federal Arbitration Act, the Court will not conduct any review under that statute.

The plaintiffs cited this same case to the arbitrator, who correctly distinguished AT&T and its progeny on the basis that "the reason that the court rather than the arbitrator decided the question of arbitrability [in those cases] was not that the court believed that only it could decide the question, but was rather a function of the objecting party's refusal to proceed to arbitration in the absence of a court order compelling it to do so." (Decision of Jobs Monitor at 8).

Unlike in AT&T, it is undisputed that the plaintiffs were parties to the 2007 MOU, which included a mandatory binding arbitration clause. Moreover, the plaintiffs do not challenge the applicability of the arbitration clause to their dispute based on the scope of the clause itself. In fact, the plaintiffs actually submitted to arbitration, as evidenced by their filing position papers with the jobs monitor.

Nevertheless, in this action, the plaintiffs challenge the enforceability of all of their obligations under the 2007 MOU, on the grounds of the severance of their relationship with the signatory employer, PCC. Given that argument, a recent opinion from the United States Supreme Court destroys the plaintiff's claim that the arbitrator lacked the authority to determine whether the plaintiffs were bound under the 2007 MOU to arbitrate the dispute raised by the UMWA. In Rent-A-Center, West, Inc. v. Jackson, the Court emphasized the distinction between a party's

refusal to arbitrate because the party claims that the arbitration clause is illegal and a party's refusal to arbitrate because it claims invalidity of the contract as a whole. 130 S.Ct. 2772 (2010). The Court held that a challenge only to the validity of an arbitration provision must be addressed by a court, while "a party's challenge to another provision of the contract, or to the contract as a whole," can be addressed by an arbitrator, as that clause remains enforceable. Id. at 2778. Because the plaintiff in Rent-A-Center challenged the enforceability of the agreement as a whole, the arbitrator, not the court, had the authority to determine the "gateway" issue of arbitrability. Id. The plaintiffs here claim that the October 2007 divestiture of PCC released them from all obligations under the 2007 MOU, including but not limited to the obligation to submit to arbitration. On the basis of reasoning in Rent-A-Center, it is clear that the arbitrator correctly determined that he had the authority to decide the issue of arbitrability. (Decision of Jobs Monitor at 8).

No party disputes that at the inception of the 2007 MOU, the plaintiffs were bound by the arbitration clause. As the Fourth Circuit recently recognized in a case where former coal miners sought to enforce the arbitration decision of a board of trustees regarding their retirement benefits, "[t]he 'reasons for insulating arbitral decisions from judicial review are grounded

in the federal statutes regulating labor-management relations,' which, 'reflect a decided preference for private settlement of labor disputes.'" Parsons v. Power Mountain Coal Company, 604 F.3d 177, 186 (4th Cir. 2010)(citing United Paperworkers' Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987)). The UMWA's claim fits squarely within this class of disputes and, as the arbitrator pointed out, at issue in this case "is a classic question of contract interpretation, grist for the arbitration mill." (Decision of Jobs Monitor at 8). The Court agrees, and finds that the arbitrator did have the authority to decide he had jurisdiction.

Even if the arbitrator erred in finding that he, rather than the court, had authority to decide whether the parties were required to arbitrate their dispute, this Court would have concluded that the UMWA's claim against the plaintiffs must be submitted to arbitration. The plaintiffs remain bound to arbitrate all disputes arising under the 2007 MOU, because there is no question that the plaintiffs were initially bound to the 2007 MOU by and through their agent, PCC. The 2007 MOU's preamble states that PCC is "solely for purposes of negotiating and executing this MOU and no other purposes, the limited agent of Peabody Holding Company, LLC and its nonsignatory coal mining subsidiaries." (2007 MOU at 1). On the final page of the 2007 MOU, PCC signed "as limited agent for Parent Corporation," which

was plaintiff PHC, and "its Nonsignatory Coal Mining Subsidiaries," which included Black Beauty. (Id. at 6 ("Peabody Coal Company, LLC... as limited agent for Parent Corporation and its Nonsignatory Coal Mining Subsidiaries")).[5] A list of all non-signatory Companies covered by the 2007 MOU, which included Black Beauty, was attached to the contract. (Id., Appx. A).

Plaintiffs argue that all of their obligations under the 2007 MOU were terminated on October 31, 2007 when the PCC divestiture occurred. Plaintiffs essentially describe common ownership between PCC and Black Beauty (and PHC) as a "condition precedent" to the enforceability of the agreement. However, there is no such "condition precedent" written in the 2007 MOU and no clause in the 2007 MOU explicitly releases any party from its obligations simply because it or another obligee has been divested from the signatory company. Indeed, the 2007 MOU expresses flexibility about the scope of coverage by providing that "job opportunities... shall be at existing, *new, or newly acquired* nonsignatory bituminous coal mining operations of the nonsignatory companies." (Id. ¶ 1 (emphasis added)).

---

[5] The plaintiffs have characterized this "limited agency" as being limited to the time during which the plaintiffs and PCC shared a common owner. However, nothing in the 2007 MOU mentions any change in the parties' obligations should the limited agent no longer be an agent for the parties. Lastly, no one disputes that the agency PCC held at the execution of the MOU was valid and the plaintiffs, as principals, cannot escape obligations the agent bound them to during the agency relationship simply because that agency relationship was later severed.

10

The plaintiffs rest part of their argument on paragraph 9 of the 2007 MOU, which states that "nothing herein shall encumber or limit in any way the rights of the nonsignatory Companies to sell, exchange, release or otherwise similarly convey... any of their nonsignatory coal lands, coal reserves or coal operations to third parties." (Id. ¶ 9). This clause does not help the plaintiffs because neither of them sold or otherwise disbursed property to third parties. Plaintiffs argue that this clause indicates that divestiture of the signatory company would likewise release non-signatories not sold therewith from the 2007 MOU. However, the plaintiffs ignore the plain language of this clause, which refers not to the sale of companies, but to the sale of "coal lands, coal reserves, or coal operations." The sale of a non-signatory's coal lands would not release the non-signatory from the 2007 MOU; rather, the 2007 MOU would not apply to the dispossessed properties.

Plaintiffs' reliance on case law is not helpful because of the critical factual differences between this case and the facts involved in the cases they cite. Plaintiffs rely heavily on <u>KenAmerican Resources v. International Union, United Mine Workers of America</u>, in which the D.C. Circuit held that a non-signatory company was not bound by the arbitration clause (or by any other provision) of an UMWA MOU because the company was never a party to the contract. 99 F.3d 1161. Although the plaintiffs admit that

this case differs insofar as Black Beauty and PHC were at one point bound by the contract, they imply that the analysis is essentially the same because they are no longer bound by the contract and thus should not be required to arbitrate. Likewise, plaintiffs rely on Litton Financial Printing v. NLRB, 501 U.S. 190, 210 (1991), in which the Court held that Litton was not bound by the arbitration agreement in a hiring contract with the NLRB because the contract had expired and there was no evidence the parties had an intent to arbitrate after the expiration of the contract. Plaintiffs contend that Litton applies because, in their view, their obligations under the 2007 MOU have expired by virtue of the divestiture. However, the plaintiffs' analyses of these cases are circular because they assume that the 2007 MOU no longer applies to them, which is indeed the ultimate issue in the present dispute. Unlike in Litton, the termination date of the 2007 MOU has not yet passed, and unlike in KenAmerican, there is no dispute that the plaintiffs were clearly parties to the 2007 MOU. Accordingly, there is no case law nor any language or evidence demonstrating that the plaintiffs are no longer bound by at least the arbitration clause of the 2007 MOU.

When parties bargain for arbitration, particularly where the arbitration language is broad and where labor disputes are involved, courts are inclined to enforce those agreements. See Parsons, 604 F.3d at 182. The UMWA argues that the issue of

whether "the Jobs MOU termination date was advanced by the divestiture of [PCC], presented a question requiring interpretation of the Jobs MOU's provisions, and thus properly presented a dispute subject to arbitration." (Def. Opp. To Pl.'s Mot. For Summ. J. at 14). See also IBT Local 70 v. Interstate Distributor Co., 832 F.2d 507(9th Cir. 1987)(holding that where an agreement contains a broad arbitration clause covering all disputes concerning the meaning of terms in the contract, "[d]isputes over termination or expiration must be submitted to arbitration"). Indeed, the arbitration clause in the MOU applies to "[a]ny dispute alleging a breach of this MOU." (2007 MOU ¶ 14 (emphasis added)). The UMWA's claim that the plaintiffs are bound by the 2007 MOU hiring plan is clearly a dispute alleging a breach of the 2007 MOU. Because the plaintiffs were clearly original parties to the 2007 MOU, pursuant to PCC's limited agency, they remain bound by the broad arbitration clause. Accordingly, whether the plaintiffs' other obligations under the 2007 MOU have been extinguished in light of the divestiture is a determination for the arbitrator.

For these reasons, summary judgment has been granted in favor of the defendant on the issue of arbitrability.

**B. Validity of the MOU**

In addition to the arbitration issue, the plaintiffs argue that pursuant to the National Labor Relations Act ("NLRA"), the

2007 MOU is invalid as applied to them. Because the Court has determined that the claim raised by the UMWA must be submitted to arbitration, it is not appropriate to address the merits of the UMWA's claim, which is left to the arbitrator for determination. Until he has issued a final and binding decision as to the merits of that claim, this Court has no jurisdiction to hear the issue. As the Fourth Circuit has repeatedly acknowledged, "'arbitration can succeed in achieving [its] goals only to the extent it is accorded finality by the judiciary." Parsons, 604 F.3d at 186 (citing Richmond, Fredericksburg, & Potomac R.R. Co. v. Transp. Commc'ns Int'l Union, 973 F.2d 276, 278 (4th Cir.)). Accordingly, plaintiffs' motion for summary judgment has been denied.

### III. CONCLUSION

For the reasons stated above and from the bench, plaintiffs' Motion for Summary Judgment [22] has been DENIED and defendant's Motion for Summary Judgment [19] has been GRANTED, although a final judgment was not entered until this opinion issued. Accordingly, an appropriate order will issue with this opinion.

Entered this 7th day of September, 2010.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge